## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KEVIN JENNINGS,

     Petitioner,

v.                              Case No. 8:18-cv-337-T-02AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

On February 7, 2018, Petitioner Kevin Jennings filed his petition under 28 U.S.C. § 2554 for a writ of habeas corpus by a person in state custody. Dkt. 1. He seeks relief from a June 26, 2012, Florida state court conviction. *Id.* Respondent filed a response in opposition, Dkt. 11, and the Petitioner provided notice of intent not to file a reply. Dkt. 12. This Court finds that a hearing is unnecessary and denies the petition.

### Background

On March 24, 2004, at age fifteen, Petitioner was arrested at his home following an altercation in which he shot his older brother. Dkt. 11-2 at 33. On October 15, 2004, Petitioner pled no contest to one count of attempted second degree murder (count one) and one count of carrying a concealed firearm (count

two); and on December 14, 2004, he was sentenced as a youth offender to concurrent sentences of four years on each count followed by two-years' community control on count one and one-year of community control on count two. Dkt. 11-2 at 16–24. Petitioner did not file an appeal and was released from prison on April 9, 2008. Dkt. 11 at 2.

Upon his release, the Petitioner began the community-control portion of his sentence, which was served without issue for twenty-one months. On January 15, 2010, however, Petitioner was arrested after allegedly violating the conditions of community control by committing new offenses of aggravated assault on a law enforcement officer, aggravated fleeing to elude, driving without a valid driver's license, failing to remain confined to his approved residence, and by leaving the county without permission. Dkt. 11 at 2; Dkt. 11-2 at 51–52. On April 4, 2010, the Petitioner admitted to violating the conditions of community control by failing to remain confined to his approved residence and leaving the county without permission and was subsequently sentenced to concurrent sentences of twenty-five years in prison on count one and five years in prison on count two. Dkt. 11 at 2. Petitioner then filed a timely notice of appeal. Dkt. 11-2 at 93.

Petitioner filed a motion to correct sentence while awaiting the result of his appeal. Dkt. 11-2 at 100. The motion was granted and the revocation of community control and associated sentence for count two were vacated because community

2

control for count two had only been one year. Dkt. 11-2 at 110. Regarding count one, the court found that, absent new law violations, the Petitioner should have been sentenced as a youth offender to no more than six years in prison. Dkt. 11-2 at 110. Based on the plea negotiations that led to the twenty-five-year sentence, the court allowed the Petitioner to withdraw or reaffirm his plea, and also allowed the state an opportunity to rescind or reaffirm the plea agreement. *Id.* Petitioner reaffirmed his plea, but the state decided to rescind the plea agreement. Dkt. 11-2 at 114, 116. In turn the court vacated the twenty-five-year sentence on count one, and Petitioner filed a plea of denial on the alleged violations and a motion for rehearing. Dkt. 11-2 at 118–19, 122. The motion for rehearing was granted in part and denied in part, and the court granted a stay pending appeal. Dkt. 11-2 at 130–32. The state appellate court affirmed without opinion on January 31, 2012. Dkt. 11-2 at 158.

The state circuit court lifted its stay on the proceedings and held a revocation hearing on June 26, 2012. Dkt. 11-2 at 164–65. The court found the Petitioner had violated the conditions of his community control by committing the new offenses of fleeing and attempting to elude an officer, aggravated assault on a law enforcement officer, and by being out of his residence and out of the county. Petitioner was then sentenced to thirty years in prison with a twenty-five-year minimum mandatory sentence on count one. Dkt. 11-2 at 271–78. On July 2, 2012,

3

the court resentenced Petitioner to the same sentence but provided that he would maintain his youthful offender status solely for classification purposes in the Department of Corrections. Dkt. 11 at 3–4. Petitioner again filed a notice of appeal. Dkt. 11-2 at 283.

The Petitioner filed a motion to correct a sentencing error while his appeal was pending. Dkt. 11 at 4. The motion was granted, so the twenty-five-year mandatory minimum was struck; however, the corrected sentence rendered on April 22, 2013 maintained the thirty-year sentence. *Id.* The state appellate court reaffirmed the revocation of community control and the sentence on May 27, 2014. *Id.*

On September 24, 2014, the Petitioner filed a signed motion for post-conviction relief. Dkt. 11-3 at 7. Petitioner raised four grounds in his motion. *Id*. at 9–20. Ground one alleged that Petitioner's counsel was ineffective for failing to call witness Kentrea Wicox at the violation of community control hearing held on June 26, 2012.  *Id.* at 10–13. Ground two alleged Petitioner's due process rights were violated by his being sentenced as a violent felony offender. *Id.*at 13–14. Ground three alleged Petitioner's due process rights were again violated, this time by his being sentenced to thirty years of incarceration based on reclassification of attempted second-degree murder to a first degree felony, despite the fact that he was designated as a youthful offender during his original sentencing. *Id.*at 14–15.

4

Finally, ground four alleged that counsel was again ineffective, this time for failing to investigate judicial bias. *Id.* at 15–19.

On April 6, 2015, the state postconviction court denied the Petitioner's motion for postconviction relief and directed the state attorney to respond to grounds one and four of the Petitioner's motion. Dkt. 11-3 at 103–12. On July 30, 2015, the postconviction court granted Petitioner a limited evidentiary hearing on grounds one and four of his motion for postconviction relief. *Id*. at 198–99.  An evidentiary hearing was held on June 9, 2016. Dkt. 11 at 5. The motion was denied on July 6, 2016. Dkt. 11-3 at 275–86. Petitioner filed an appeal which was affirmed without an opinion. *Id*. at 300, 49. Petitioner then filed his petition for federal habeas corpus relief. Dkt. 1. Respondent concedes, and this Court agrees, that the petition is timely and appropriately exhausted.

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction on a claim:

> that was adjudicated on the merits in the State court proceedings unless the state court's decision was '(1) . . . contrary to, or involved an

5

unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

*Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

Moreover, a state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). Indeed, "even if reasonable minds reviewing the record might disagree about the [fact] finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Further, this standard applies even if the state

court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002). If this Court determines that the state court's adjudication of Petitioner's claim was unreasonable under § 2254(d), we must then undertake a de novo review of the record. *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir. 2009).

## Discussion

Petitioner raises three grounds for relief. Respondent argues that each of these grounds are meritless and should be denied. This Court agrees.

### 1. Ineffective Assistance of Counsel: Failure to Call Witness Claim

In Ground One, Petitioner argues that his attorney was ineffective at his violation of community control hearing for failing to call Kentrea Wicox as a witness. Dkt. 1 at 3. Counsel is ineffective if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). But in the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks

7

omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted). Petitioner fails to meet this high standard.

Simply, Petitioner argues that his conviction was based on two pieces of evidence: Wicox's identification of him and Deputy Lutz's identification of him. On the night of the arrest, Deputy Lutz noticed an SUV with a broken tail light drive past him. Dkt. 11-2 at 184. Deputy Lutz followed the SUV for some time before attempting to make a traffic stop when the vehicle stopped in a neighborhood. *Id.* at 184–85. Once the vehicle stopped, a passenger, later found to be Ms. Wicox, got out of the passenger side of the vehicle, and made her way into an adjacent home. *Id.* at 186. Deputy Lutz then approached the vehicle, but before he got to the driver's side, the vehicle took off. *Id*. Deputy Lutz took chase. *Id.* at 187.

After some time being chased, the SUV turned into a gravel parking lot. *Id.* at 188. Officer Lutz assumed the driver was about to get out of the SUV and run away on foot but the SUV immediately made a U-turn in the driveway and began to charge towards Officer Lutz. *Id.* At that moment, with his headlights shining and his car temporarily stationary, Officer Lutz made eye contact with the driver of the SUV. *Id.* at 189. Then to avoid being rammed by the SUV driver Officer Lutz

8

quickly reversed his vehicle with the cars essentially being "nose to nose." *Id.* at 188. The SUV then took off and Officer Lutz was unable to follow. *Id.* at 189.

At this point, Deputy Lutz and another officer, Deputy Kenney, returned to the home that Ms. Wicox was dropped off at to interview her. *Id.* at 195. Ms. Wicox told the officers "that the driver of that vehicle had called her at the house before and was able to provide [them] a telephone number for him, and that telephone number was also identified by a digital name printout on that phone . . . as [Petitioner]." *Id.* at 196. At this point an unknown caller telephoned Ms. Wicox. *Id.* at 196–97. She answered and the man on the line began to ask her questions about whether she told the police who he was—indicating that the caller was also the driver. *Id.* at 197–98. Deputy Kenney then showed Deputy Lutz a photograph of Petitioner and Deputy Lutz claimed that he recognized Petitioner as the driver of the SUV. *Id.* at 200.

The officers then relayed the information to the Bradenton Police Department, who arrested Petitioner in his home. *Id.* at 199–200. The SUV was not at the home when officers arrived and was found a few days later miles away from the home with no physical evidence that Petitioner had been associated with it. *Id.* at 208–09. Although Petitioner claimed he was at his mother's house during the time of the alleged incident, Deputy Lutz provided a final identification at the

scene of arrest, and Petitioner was then arrested for fleeing Deputy Lutz and violating the terms of his probation. *Id.* at 200.

Petitioner now argues that his trial counsel was ineffective for failing to call Wicox as a witness at the violation hearing. While Petitioner alleges he had phone calls with Wicox where she admitted lying to police and told Petitioner she would testify, Dkt. 1 at 5, Petitioner needs more than conclusory allegations. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a movant is not entitled to habeas relief when his claims are merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."). Petitioner would need actual testimony by Wicox or an affidavit attesting to her new statement. *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Because Petitioner has not presented Wicox's testimony outside of Petitioner's uncorroborated self-serving hearsay, Petitioner's claim cannot be granted.

But even accepting Wicox's purported testimony, the postconviction court found Petitioner failed to meet his burden under *Strickland*. The postconviction court held:

In his motion, he alleges that her absence resulted in prejudice because her testimony, combined with a police identification discrepancy [as to Petitioner's skintone], would have changed the outcome of the VOCC hearing. However, his allegation of prejudice is refuted by the record. There was enough evidence presented at the VOCC hearing that Ms. Wicox's testimony was not dispositive of Defendant's case. The Court was well aware of Ms. Wicox's alleged statements, as testified to by Defendant and his relative, Mary Holloway. The Court still found Defendant guilty of VOCC based on the other evidence presented.

Deputy Samuel Lutz of the Sarasota County Sheriff's Office testified at Defendant's VOCC hearing and indicated that the person he observed driving the vehicle on the night Defendant was arrested was a "light-skinned black male." Deputy Lutz also stated that he was able to identify Defendant immediately as the person driving the vehicle, after being shown a photograph of Defendant on Deputy Kenney's computer. He also identified him when he was being escorted out of his residence under arrest. Finally, Deputy Lutz explained that the description contained in the Sheriff's case card, indicating that the suspect driving the car was a dark-skinned black male, was likely due to a typographical error.

While Defendant contends that there was a "discrepancy" in the police identification during the VOCC hearing, Defendant's assertion mischaracterizes the testimony offered by Deputy Lutz. Deputy Lutz did not offer any inconsistent testimony during that hearing, and he explained that the inconsistency in the Sheriff's case card, which was prepared by the Sheriff's Office dispatcher rather than Deputy Lutz, was likely due to a typographical error. Accordingly, the Court finds that the record clearly indicates that there was reliable, consistent testimony offered during the VOCC hearing on which the Court could conclude that Defendant was in fact the person driving the vehicle, consistent with Deputy Lutz's testimony.

As Defendant could not show prejudice, he fails to show ineffective assistance of counsel. Therefore, further analysis on this issue is not necessary.

Dkt. 11-3 at 280–82 (internal citations omitted). After a review of the record and

the applicable law the Court finds Petitioner is not entitled to relief based on this

claim. The state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings.

Petitioner is unable to show that the postconviction court was unreasonable in its view of the facts. For *Strickland's* deficiency prong, it is unclear what the postconviction court held. The postconviction court discusses Petitioner's trial counsel's conduct but does not make a direct finding whether his actions were deficient. This is likely because it is unclear whether Petitioner's counsel's actions were deficient. However, in order to be entitled to relief Petitioner must have proven both *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (1984) (noting that a court may decide or analyze the prongs in any order because both are necessary for relief). And Petitioner is unable to show that the postconviction court's prejudice prong finding was unreasonable.

Prejudice is established by a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As noted, Petitioner's conviction was essentially based on two pieces of evidence: Wicox's initial identification of him as the driver of the SUV and Officer Lutz's identification of the same. Petitioner argues that if Wicox had testified the outcome of the proceeding would have been different. There is

12

some possibility that this is true, but this Court can only provide habeas relief if Petitioner shows that the postconviction court unreasonably found that Wicox's testimony would have had no effect. This Petitioner has not done.

The postconviction court found "that the record clearly indicates that there was reliable, consistent testimony offered during the [hearing] on which the Court could conclude that Defendant was in fact the person driving the vehicle[.]" Dkt. 11-3 at 281–82. The postconviction court noted that Officer Lutz's identification provided sufficient basis for the conviction. While this Court may view the facts of this case differently, Petitioner is unable to show that this is an unreasonable view of the facts.

Petitioner must contend with the identification by Officer Lutz. No matter if Wicox had testified, Officer Lutz testified that he saw Petitioner driving the SUV. Petitioner argues that the identification by Officer Lutz was suspect because it would have been improbable for him to see the driver of the car during the car chase and the description recorded by dispatch—and allegedly given by Officer Lutz—described the driver as a dark-skinned black male while Petitioner is light-skinned. Yet, this Court must accept any findings of fact made by state courts unless they are shown to be unreasonable. Plaintiff is unable to do so.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of that

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation omitted). While this Court may find Officer Lutz's identification less than perfect, a fair-minded jurist could disagree and find the identification entirely plausible. It may have been difficult for Officer Lutz to see who was driving the fleeing SUV while backing up to escape, but it was surely not impossible. Officer Lutz testified that he had his lights on while backing up and that he was initially stationary in his vehicle before the driver of the SUV drove at him. So, for some time—albeit brief—Officer Lutz was stationary while looking directly into the fully illuminated cabin of the SUV. Dkt. 11-2 at 188. This may not have been a perfect identification nor was it unimpeachable—in fact Petitioner's trial counsel spent a great deal of time on this point—but it is a reasonable finding for the state court to make that Officer Lutz saw Petitioner driving the vehicle.

And, while the switch up of dark-skin and light-skin in the dispatch description is worrisome, it is not unreasonable to believe Officer Lutz's identification anyway. Even assuming Officer Lutz originally identified the driver of the SUV as dark-skinned—something that is not entirely clear from the record—it is not unreasonable to find that Petitioner's skin color could be mistaken in the context of Officer Lutz's initial identification.

While this Court may find some of the details troubling and may very well take a different view of the facts in this case had it been the trier of fact, the

postconviction court's view of the facts is reasonable and based on factual determinations that Petitioner is unable to rebut with evidence. While Petitioner's trial counsel could have shown more diligence about pursuing Wicox and calling her at the hearing so she could recant her identification of Petitioner, Petitioner is unable to show that the postconviction court's finding that there was no prejudice was unreasonable. In habeas cases "state court[s] must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). There is a reasonable argument that Officer Lutz's identification was believable and sufficient on its own so that Wicox's testimony would have been futile. So Petitioner is not entitled to relief under Ground One.

### 2. Due Process Violation Under Sixth and Fourteenth Amendments Claim

In Ground Two, Petitioner claims that he was illegally sentenced to 30-years' incarceration when his second-degree felony—attempted second-degree murder—was "reclassified to a first-degree felony for use of a firearm under §775.087(1)(b), Fla. Stat. (2004) and (2012), the 10/20/Life statute, after he was designated a youthful offender at his original sentencing." Dkt. 1 at 9–10. Petitioner asserts that the state trial court, as well as the state appellate court's ruling on the issue, is contrary to, or involved an unreasonable application of clearly established federal law as determined by the Sixth and Fourteenth

15

Amendments to the U.S. Constitution, and resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. But this Ground is not appropriate for federal habeas review.

On October 15, 2004, Petitioner entered a plea of *nolo contendere* to Count One: Attempted Second-Degree Murder with a firearm; and Count Two: Carrying a Concealed Weapon. Dkt. 11 at 1 He was subsequently designated a youthful offender and sentenced to 4 years' Florida Department of Corrections (FDC) followed by 2 years' community control for Count One and 4 years' FDC followed by 1 year of community control for Count Two.*Id.* at 1–2. Petitioner asserts that since he was designated as a youthful offender during his original sentencing, the offense could not later be reclassified—as was done during his subsequent sentencing. But this claim involves a matter of state law not fit for federal habeas review. It follows that Petitioner is not entitled relief on Ground Two.

Only a violation of federal law subjects state custody to federal habeas review. *See* 28 U.S.C. §2254 (a) ("[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States.") "[F]ederal habeas corpus relief does not lie for errors of state law" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010)

16

(internal quotation omitted). Whether an offense can be reclassified based on the use of a firearm after a defendant is found to be a youthful offender is a question of state law and "[a] state prisoner does not raise an issue of federal constitutional concern my merely couching state law issues in terms of due process." *Sellers v. Sec'y, Fla. Dep't of Corr.*, No. 16-15419-G, 2017 WL 3873376, at *4 (11th Cir. June 1, 2017) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)). Since Petitioner in this case only raises a claim that involves a matter of state law, he is not entitled to relief.

### 3. Ineffective Assistance of Counsel: Defense Counsel Failed to Investigate Judicial Bias and Recuse Judge Claim

Petitioner asserts that defense counsel was ineffective for not adequately investigating any judicial bias by the presiding judge, Circuit Judge Janette Dunnigan. Petitioner points to an April 2011 email sent by the trial judge offering to help arrange a fundraiser for the prevailing state attorney candidate in the lead up to an election. Dkt. 1 at 12.

At the postconviction evidentiary hearing, Petitioner's counsel testified that he became aware of the trial judge's April 2011 email on August 9, 2012, after hearing that another defense attorney filed a motion to recuse the trial judge in an unrelated case. Dkt. 11-3 at 228. The email was sent from the trial judge's official court email account and asked the court administrator to inform the candidate that Ed Chiles, the son of a former Florida governor, would support the candidate's

17

campaign. Specifically, the trial judge recounted, "You can tell [the candidate] that Ed Chiles will support him and do a fundraiser up here. I talked with him on Saturday…Tell [the candidate] to mention my name when he calls." Dkt. 1 at 13. The email was then forwarded to the candidate. Dkt. 11-3 at 177.

The other defense attorney that filed a motion for the trial judge to recuse herself in her case had her motion denied, and then appealed to the Second District Court of Appeal claiming that the trial judge was biased towards the prosecution because of the content of her email. Dkt. 1 at 13–14. However, the trial judge voluntarily transferred herself from the criminal division to the civil division of the Twelfth Judicial Circuit, making the appeal moot. *Id* at 14. Petitioner argues that by voluntarily transferring herself, the trial judge had admitted the impropriety of her actions and construed a bias towards the prosecution. *Id.*

However, Petitioner's defense counsel claimed that after researching the issue, he did not think that a motion to recuse would be well-founded. Dkt. 11-3 at 231–32. Counsel also testified that the evidentiary hearing took place months before he was aware of the email and there was no reason to suspect that such an email existed. *Id.* at 240. Petitioner claimed to have heard about the content of Judge Dunnigan's email from a newspaper article and accordingly he wrote his counsel numerous letters on the issue. *Id.* at 250–51. Later, Petitioner asserted that

he asked counsel to file a motion to vacate his sentence based on the content of the email. *Id.* at 251.

In denying relief on the claim, the state postconviction court found counsel's decision not to file a motion for recusal was a reasonable one. Dkt. 11-3 at 284. The court concluded that counsel's decision not to file a motion was made after consultation with colleagues and thorough analysis. *Id.* at 283–84. The postconviction court gave counsel's decision significant deference since counsel thoroughly considered the possibility of filing such a motion, even though he ultimately decided not to. *Id.* In the absence of considerable evidence showing that such a decision was unreasonable, the postconviction court found that counsel's decision was not unreasonable; and this Court agrees. As noted above, "strategic choices made [by trial counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" *Strickland*, 466 U.S. at 690–91. Since Petitioner's trial counsel conducted reasonable investigation into this issue his trial counsel was not deficient under *Strickland* and he is not entitled to relief under this claim.

Moreover, even if his counsel's actions were deficient, the postconviction court found that the Petitioner did not suffer any actual prejudice by trial counsel's decision not to file a motion to disqualify Judge Dunnigan from the case. Dkt. 11-3 at 284–85. The postconviction court supported this notion by recognizing that

Petitioner's sentence was ultimately affirmed on appeal. *Id.* Based on the factual findings of the case, the postconviction court reasonably concluded that Petitioner failed to establish any deficient performance of counsel or prejudice. This Court affirms the denial of relief on this claim since it was not contrary to, nor an unreasonable application of, *Strickland*. Petitioner is not entitled to relief on Ground Three.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

## Conclusion

The Court denies the Petition with prejudice. Dkt. 1. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on August 10, 2020.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, *pro se*

21